UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

LESLIE MCGINNIS,

        Plaintiff,                        Case No. 2:23-cv-134

v.                                         Honorable Paul L. Maloney

HEIDI WASHINGTON et al.,

        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court's preliminary review of Plaintiff's complaint under the PLRA has brought to light Plaintiff's attempt to join unrelated claims against the defendants into a single lawsuit. Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. For the reasons set forth below, the Court will drop as misjoined Defendants "John/Jane Doe" and Knapp. The Court will dismiss Plaintiff's claims against these Defendants without prejudice.

With regard to Plaintiff's claims against Defendants Washington and O'Brien, under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42

U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi Washington, MDOC Hearings Officer Unknown O'Brien, MCF Medical Administrator Unknown Party "John/Jane Doe," and MCF Captain Unknown Knapp, in their official and individual capacities.

Plaintiff alleges that, while housed in the Kinross Correctional Facility (KCF) in 2020, Plaintiff received several substance abuse misconduct reports for removing his "keep on his person" medications—such as Tylenol, acid reflux medicine, and Motrin—from their original packaging and placing them in pill bottles. (ECF No. 1, PageID.1.) Plaintiff was found guilty and received sanctions, including 30 days and 15 days of toplock, permanent visiting restrictions, one-year-loss of leisure time activities, loss of current room, and possible loss of a job. (*Id.*) Plaintiff claims that, in the course of the hearings on the misconduct reports, Defendant O'Brien "dishonestly suppressed evidence of Plaintiff's innocence." (*Id.*, PageID.5.) Plaintiff also claims that he told Defendant O'Brien that the MDOC policy on which his misconduct tickets were based was invalid "as the Director of the Michigan Department of Corrections had not complied with the rule making procedures of the Administrative Procedures Act;" however, that argument was rejected throughout the MDOC's misconduct hearings and appeals processes. (*Id.*, PageID.6.)

While at KCF, Plaintiff had been scheduled to have his teeth pulled; however, Plaintiff was late for his appointment and his call out was cancelled. (*Id.*, PageID.2.) Nonetheless, Plaintiff was charged a co-pay for the appointment. (*Id.*)

On an unspecified date, Plaintiff contracted COVID-19 and was eventually transferred to MCF. (*Id.*, PageID.2.) On November 15, 2021, while at MCF, Plaintiff submitted a healthcare kite stating, "I was charged a co-pay at KCF but they did not fix/pull my teeth they said needed it. They are rotting now and chipping more." (*Id.*) On November 18, 2021, a dental clinic dental assistant replied, "You are still on the list and will be call [sic] out in turn as resources allow. Thank you. Dental Clinic." (*Id.*) As of the time that Plaintiff filed his complaint nearly 18 months later, Plaintiff had not seen a dentist nor had any dental work done. (*Id.*) Plaintiff alleges that he "suffers daily from broken and chipped teeth cutting his gums," is in pain, and has problems eating. (*Id.*, PageID.2–3.) "Plaintiff did not file a grievance over this issue as it is futile." (*Id.*, PageID.5.)

On February 22, 2023, Plaintiff had a fleece jacket and sweatshirt hanging in front of his cell. (*Id.*, PageID.3.). Defendant Knapp threw the clothing items away without writing Plaintiff a ticket. (*Id.*) When Plaintiff informed Defendant Knapp that the clothes belonged to another prisoner and were properly tagged, Defendant Knapp told Plaintiff that his actions were proper in accordance with MDOC policy. (*Id.*) Defendant Knapp then told Plaintiff to "get away from me before I write you up for threatening and intimidating behavior." (*Id.*) Plaintiff had to pay the owners of the clothes $150.00 for the loss. (*Id.*) Plaintiff claims that the MDOC policy relied upon by Defendant Knapp was and is invalid under Michigan law. (*Id.*, PageID.4.) Plaintiff filed a grievance based upon Defendant Knapp's disposal of the inmate's clothing. (*Id.*, PageID.6–7.)

Plaintiff brings claims for violation of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights, and Michigan law. He seeks compensatory damages and injunctive and declaratory relief.

3

## II. Misjoinder

Plaintiff brings this action against four Defendants, alleging that he was harmed over a span of years at two separate MDOC facilities. Under Rule 21 of the Federal Rules of Civil Procedure, the Court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. At this juncture and prior to reviewing the merits of Plaintiff's allegations, the Court reviews whether Plaintiff's claims are misjoined.

### A. Improper Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

4

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless *one* claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (emphasis added) (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting improper joinder of parties or claims in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004).

The Seventh Circuit has explained that a prisoner like Plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to

5

> ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)....
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three-strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions. Courts are therefore obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

The analysis of joinder must start somewhere. There must be a first defendant and claim to permit the Court to determine whether joinder is proper. The first series of events described within

6

Plaintiff's complaint took place while Plaintiff was housed at KCF in or around 2020. (ECF No. 1, PageID.1, 5–6.) Plaintiff alleges that he received "several substance abuse misconduct reports" and that Defendant O'Brien presided over Plaintiff's hearings on the same. (*Id.*) Plaintiff claims that, while presiding over one or more hearings, Defendant O'Brien "dishonestly suppressed evidence of Plaintiff's innocence" (*id.*, PageID.5) and rejected Plaintiff's argument that the MDOC policy on which his misconduct tickets were based was invalid (*id.*, PageID.6). By accepting Plaintiff's own presentation of the facts, the Court is considering the issue of joinder as Plaintiff has presented it in the complaint.

Plaintiff does not bring any additional claims against Defendant O'Brien. Liberally construed, the Court finds that Plaintiff's attempt to name MDOC Director Heidi Washington could, theoretically, arise out of this incident or series of incidents given Plaintiff's allegation that the Director of the MDOC did not comply with the rule-making procedures of the Administrative Procedures Act when amending MDOC Policy Directive 03.03.105. (*Id.*, PageID.6.). However, no matter how liberally the Court construes the complaint, Plaintiff has not stated at least "one claim against each [remaining] defendant [that] is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (citations omitted). Plaintiff does not allege that any other Defendant was involved in Plaintiff's 2020 misconduct reports or hearings while at KCF. The first allegation against any other Defendant occurred in November 2021 after Plaintiff had been transferred to MCF, when Plaintiff was denied dental care by a member of the dental clinic staff. There is no basis to conclude that these events arise out of the same transaction or occurrence. *See Proctor*, 661 F. Supp. 2d at 778. There is no transaction or occurrence, *see* Fed. R. Civ. P. 20(a)(2)(A), nor is there a question of law or fact,

*see* Fed. R. Civ. P. 20(a)(2)(B), that is common to all Defendants. Accordingly, the Court concludes that Defendants "John/Jane Doe" and Knapp are misjoined.

**B.    Remedy**

Because the Court has concluded that Plaintiff has improperly joined to this action Defendants "John/Jane Doe" and Knapp and the claims against them, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time. . .' " (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989))); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. To Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely

8

claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Plaintiff's complaint, describing events that took place in 2021 and 2023, as related to Defendants "John/Jane Doe" and Knapp, provides no indication that the statute of limitations has or will run on Plaintiff's claims against these Defendants, and Plaintiff has provided no basis for this Court to conclude that Plaintiff would suffer gratuitous harm if claims against these Defendants are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendants "John/Jane Doe" and Knapp from this suit, dismissing Plaintiff's claims against them without prejudice to the institution of new, separate lawsuits. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("In such a case, the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs"); *Carney*, 2008 WL 485204, at *3 (same).

If Plaintiff wishes to proceed with his claims against Defendants "John/Jane Doe" and Knapp, he shall do so by filing new civil actions *on the form* provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fee. Plaintiff is cautioned that he must limit all future actions to defendants and claims that are transactionally related to one another. Plaintiff is cautioned that the failure to file lawsuits on the required form or filing scattershot complaints full of misjoined claims may result in prompt dismissal upon preliminary review.

9

### III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

#### A. Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1. Official Capacity Claims

Plaintiff sues Defendants in both their individual and official capacities. A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771. Therefore, the Court will dismiss all of Plaintiff's federal claims for damages against Defendants Washington and O'Brien in their official capacities, on grounds of immunity and for failure to state a claim.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief may constitute an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). However, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Here, Plaintiff is no longer confined at KCF, which is where he avers that Defendant O'Brien is employed and where the harm allegedly occurred. The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Underlying this rule is the premise that such relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in immediate danger of sustaining direct future injury as the *result* of the challenged official conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

Moreover, the relief that Plaintiff seeks related to his 2020 misconduct hearings is not prospective. Instead, Plaintiff seeks relief for past harm. However, past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill.

1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Therefore, Plaintiff's claims for injunctive and declaratory relief against Defendants Washington and O'Brien in their official capacities are also properly dismissed.

### 2. Defendant Washington

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)).

Here, Plaintiff's mentions the Director of the MDOC in his factual allegations only once. He claims that the Director of the MDOC failed to comply with the rule-making procedures of the Michigan Administrative Procedures Act and that, as a result, the policy on which Plaintiff's substance abuse misconduct reports were based is and was invalid. (ECF No. 1, PageID.6.) However, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law or prison policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

To demonstrate a violation of procedural due process sufficient to state a claim under §º1983, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without

adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that Defendant Washington violated state law fails to raise a cognizable federal claim.

Moreover, to the extent Plaintiff intends to impose liability on the Director of the MDOC as a supervisor of Defendant O'Brien or others who participated directly in the alleged unconstitutional conduct, it is well-settled that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff fails to allege any action whatsoever by Defendant Washington that would give rise to a constitutional claim. Accordingly, the Court will dismiss Plaintiff's action against Defendant Washington.

### 3. Defendant O'Brien

Plaintiff's claims against Defendant O'Brien are two-fold. First, Plaintiff claims that Defendant O'Brien "dishonestly suppressed evidence of Plaintiff's innocence" in connection with the hearings on Plaintiff's misconduct reports. (ECF No. 1, PageID.5.) And second, Plaintiff alleges that Defendant O'Brien wrongfully rejected Plaintiff's argument that the MDOC policy on which his misconduct tickets were based was invalid. (*Id.*, PageID.6.). As discussed above, Plaintiff's claim that his misconduct reports were based upon invalid MDOC policy in violation of state law are not cognizable under § 1983. The Court will therefore address Plaintiff's first allegation which challenges Plaintiff's misconduct convictions as unfair under the Fourteenth Amendment's Due Process Clause.

A prisoner's ability to challenge a prison misconduct conviction for violation of due process depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

Plaintiff does not allege that any misconduct conviction had an effect on the duration of his sentence; he cannot. Plaintiff is serving sentences imposed in 2014 for crimes committed in 2013. *See* Offender Tracking Information System, https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=139325 (last visited July 31, 2023). The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits for prisoners convicted for crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains

discretionary with the parole board. *Id.* at 440; *see also Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009). Building on these rulings, in *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011), the court held that under the current iteration of Michigan's good behavior reward scheme, known as disciplinary time, a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. *See also Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *report and recommendation adopted*, 2011 WL 5491196 (E.D. Mich. Jan. 4, 2011).

Moreover, the potential punishments that follow a conviction for major misconduct—"detention . . . not to exceed 10 days [or] . . . [t]oplock, not to exceed 30 days [and] [l]oss of privileges, not to exceed 30 days [and] [r]estitution . . . "—do not impose atypical and significant hardships in relation to the ordinary incidents of prison life. *See, e.g.*, *Powell v. Washington*, 720 F. App'x 222, 225 (6th Cir. 2017) ("Powell failed to state a claim for a due-process violation because his detention in administrative segregation did not impose an atypical and significant hardship . . . ."); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (holding that "'plaintiff's placement in administrative segregation was not an atypical and significant hardship, as intended by *Sandin* . . .'" (quoting *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995))). Federal courts have consistently found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs or activities under the Fourteenth Amendment. *See, e.g.*, *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that the Due Process Clause was not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir.

2003) (finding that prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952–54 (6th Cir. 1989) (concluding that prisoners have no constitutional right to rehabilitation); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (finding that participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (concluding that prisoners have no constitutional right to rehabilitative services). And the Sixth Circuit has held that a ban on virtually all visitation for prisoners found guilty of two or more violations of the major misconduct charge of substance abuse does not implicate a constitutionally protected liberty interest because it is "neither a 'dramatic departure,' nor an 'atypical and significant hardship' in relation to the ordinary incidents of prison life." *Bazzetta v. McGinnis*, 430 F.3d 795, 802–03 (6th Cir. 2005). Therefore, Plaintiff's major misconduct hearings did not implicate due process protections.

Additionally, even if Plaintiff were entitled to due process protections, Plaintiff fails to allege sufficient facts to plausibly state a claim. Plaintiff alleges only that Defendant O'Brien "dishonestly suppressed evidence of Plaintiff's innocence." (ECF No. 1, PageID.5.) Plaintiff does not describe the evidence, how it was "suppressed" by the hearing officer, the hearing or hearings for which it was suppressed, or how it would have been instrumental to demonstrating Plaintiff's innocence. Plaintiff offers nothing more than an ambiguous and conclusory allegation of dishonesty. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiff asks the Court to fabricate plausibility to his claim from mere ambiguity. But ambiguity does not support a claim. It is Plaintiff's obligation at this stage in the proceedings to plead enough factual content to permit the Court to draw a reasonable inference that Defendant O'Brien violated

the Due Process Clause. *See Iqbal*, 556 U.S. at 679. Plaintiff has not done so here. His due process claim against Defendant O'Brien will be dismissed.

**B.     State Law Claims**

In addition to bringing claims under § 1983, Plaintiff also appears to bring claims for violation of Michigan state law. As discussed above, Plaintiff's assertions that Defendants violated state law or the MDOC's policies fail to state a claim under § 1983. *See Lugar*, 457 U.S. at 924; *Pyles*, 60 F.3d at 1215; *Sweeton*, 27 F.3d at 1166.

In determining whether to retain supplemental jurisdiction over state-law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).

Because Plaintiff's federal claims against Defendants Washington and O'Brien will be dismissed, the Court will dismiss Plaintiff's state-law claims against these Defendants without prejudice to Plaintiff's ability to bring those claims in state court.

## Conclusion

The Court has reviewed Plaintiff's complaint under the Federal Rules of Civil Procedure regarding the joinder of claims and parties. The Court concludes that Defendants "John/Jane Doe" and Knapp are misjoined. The Court will drop them as parties and dismiss Plaintiff's claims against them without prejudice.

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims against Defendants Washington and O'Brien will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court will also dismiss Plaintiff's state-law claims against these Defendants without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore*, 114 F.3d at 611. Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   August 17, 2023                              /s/ Paul L. Maloney
                                                                                      Paul L. Maloney
                                                                                      United States District Judge